## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| GEORGE J. COTTAGE | ) | CASE NO.   4:05 CV 2293 |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| UNITED STATES OF AMERICA | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| DEFENDANT | ) | |

This matter is before the Court upon the Motion to Dismiss filed by the United States of America.  <u>See</u> (Dkt. # 6).

## I.     BACKGROUND

On October 21, 2002, the Plaintiff, George J. Cottage, an inmate incarcerated at FCI Elkton, was assaulted by another inmate and suffered severe injuries including, a broken hip and femur.[1]  <u>See</u> (Compl. ¶¶ 22-25).  The Plaintiff thereafter filed a Claim for Damage, Injury or Death (Standard Form 95) with the Federal Bureau of Prisons Northeast Regional Office therein alleging that his "personal injuries would not have occurred but for the negligent acts or omissions of the Federal Bureau of Prisons, FCI Elkton, employees acting within the

---

[1]The Plaintiff currently is an 84 year old inmate incarcerated at the Federal Medical Center – Lexington, in Lexington, Kentucky.  <u>See</u> (Compl. ¶ 20).

scope of their employment."  (Compl. ¶ 3, Ex. A.)  The Plaintiff requested $300,000.00 in damages.  See (Compl. ¶ 3, Ex. A).

By letter dated March 28, 2005, the BOP's Regional Counsel denied the Plaintiff's claim, determining, in pertinent part:

> Investigation reveals on October 21, 2002, your client was assaulted by another inmate.  He received immediate medical treatment for his injuries.  Records show your client failed to advise staff of problems he may have anticipated having with this inmate.  Without prior knowledge of a specific problem, the Bureau of Prisons cannot be held responsible for the acts of other inmates. Your client's failure to properly advise staff of any anticipated problems with the other inmate prevented staff from taking any action on the part of any Bureau of Prisons' staff in this matter.

(Compl., Ex. B.)

The Plaintiff filed his complaint in this Court against the United States of America on September 26, 2005 asserting a claim of negligence pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680.  See (Compl.).

The instant motion ensued.

## II.    STANDARD OF REVIEW

The Government advances the present motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenging the Court's subject matter jurisdiction.  A party seeking to dismiss a claim pursuant to Rule 12 (b)(1) may engage in either (1) a facial attack to the complaint; or (2) a factual attack on the allegations averred in the pleadings.[2]  See Ohio Nat'l

---

[2]The plaintiff, as the party invoking federal subject matter jurisdiction, generally bears the burden of persuading the court that subject matter jurisdiction exists in the case.  See Dismas Charities, Inc. v. United States DOJ, 401 F.3d 666, 671 (6th Cir. 2005).  The United States Court
(continued...)

<u>Life Ins. Co. v. United States</u>, 922 F.2d 320, 325 (6th Cir. 1990).  A facial attack is a challenge to the court's subject matter jurisdiction that takes the material allegations of the complaint as true and construes them in a light most favorable to the nonmoving party.  <u>See RMI Titanium Co. v. Westinghouse Elec. Corp.</u>, 78 F.3d 1125, 1134-35 (6th Cir. 1996).  In contrast, a factual attack is "not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction."  <u>United States v. Ritchie</u>, 15 F.3d 592, 598 (6th Cir. 1994); <u>see</u> <u>also</u>, <u>Ohio Nat'l Life</u>, 922 F.2d at 325.

Where the district court considers a factual, rather than a facial, jurisdictional attack, it is empowered to resolve disputed questions of fact bearing on the court's jurisdiction.  <u>See Rogers v. Stratton Indus., Inc.</u>, 798 F.2d 913, 915 (6th Cir. 1986).  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction, the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  <u>See Ohio Nat'l Life</u>, 922 F.2d at 325.

## III.  LAW AND ANALYSIS

The United States Constitution entrusts Congress with the exclusive power to determine a lower federal court's subject-matter jurisdiction.  <u>See</u> U.S. C<span style="font-variant:small-caps">ONST</span>. art. III, § 1; <u>Kontrick v. Ryan</u>, 540 U.S. 443, 452 (2004). Congress has provided district courts with subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or

---

[2](...continued)
of Appeals for the Sixth Circuit expressly has declined to determined which party bears the burden of proving the applicability or inapplicability of the jurisdictional waiver addressed in the present case.  <u>See</u> <u>Sharp v. United States</u>, 401 F.3d 440, 443 n.1 (6th Cir. 2005)

treaties of the United States."  28 U.S.C. § 1331 (2005).  Where, as here, the defendant is the United States, Congress must consent to the Government's being sued.  See Montez v. United States, 359 F.3d 392, 395 (6th Cir. 2004) (citing United States v. Orleans, 425 U.S. 807, 814 (1976)). Through its enactment of the FTCA, Congress has waived the United States's immunity from suits:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).[3]  The FTCA also makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674; see generally, Dolan v. United States Postal Serv., 126 S. Ct. 1252, 1256 (U.S. 2006).  These waivers of sovereign immunity are subject to a number of exceptions, including the discretionary-function exception codified in 28 U.S.C. § 2680(a).  See 28 U.S.C. § 2680(a) (stating that 28 U.S.C. § 1346(b)'s waiver of sovereign immunity does not apply to "any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused").

---

[3]The Court construes the Complaint as attempting to vest subject matter jurisdiction exclusively through the FTCA.  While the Complaint present a series of averments addressing the Plaintiff's efforts to secure a compassionate release, it is beyond cavil that this Court lacks jurisdiction over such claims.

The Supreme Court has set forth a two-part test to determine whether the discretionary function exception applies, thereby barring the claim.  See Berkovitz v. United States, 486 U.S. 531, 536-37 (1988).  For the exception to apply, the first prong requires that the challenged governmental action be the product of "judgment or choice."  United States v. Gaubert, 499 U.S. 315, 322 (1991).  Under this prong, the Court determines whether a statute, regulation, or policy mandates a specific course of action.  Id.  If such a mandate exists, the discretionary function exception does not apply and the claim may move forward.  When no mandate exists, however, the governmental action is considered discretionary and the first prong is satisfied.

The second prong requires that the judgment or choice be based on "considerations of public policy."  Id. at 323 (quoting Berkovitz, 486 U.S. at 537).  Under this prong, the Court determines whether the judgment is "grounded in social, economic, or political policy."  Gaubert, 499 U.S. at 323 (quoting United States v. Varig Airlines, 467 U.S. 797, 813).  If the judgment of the governmental official is based on any of these policy considerations, then the discretionary function exemption applies and the claim is barred.

The United States has invoked the discretionary function exemption as a means to bar the Plaintiff's claim.  In support of its motion, the United States relies upon the decision of the United States Court of Appeals for the Sixth Circuit in Montez v. United States, 359 F.3d 392, where the court determined that the discretionary function exemption precluded a suit arising from an altercation between inmates housed in a federal prison.  There, an inmate was found dead in the housing unit of the prison after being beaten to death with a fire

-5-

extinguisher.  Id. at 393-94.  The assault occurred in an unsupervised area and the prison

officials were unaware of the assault until a corrections officer discovered the body.  Id. at

394.  The prisons officials, however, were aware that the deceased inmate had prior

altercations with other inmates and they previously had placed the deceased inmate in

protective lock-up.  Id.  Two other inmates later were convicted of the murder.  Id.

> The inmate's estate brought suit pursuant to the FTCA claiming, in pertinent part:
>
> The inmate's murder was the "direct and proximate result of the negligence" of the prison officials/employees.
>
> As the inmate was "in protective lock-up prior to the attack, employees/officials of the defendant knew or should have known that the inmate was in imminent danger of likely injury of substantial certainty and consciously and knowingly failed to afford him reasonable protection."
>
> Prison officials placed the inmate in a facility that they "knew or reasonably should have known was so inadequate that the inmate could not be adequately protected from the risk of assaults by fellow prisoners."
>
> The officials "were required to use ordinary care in determining whether a federal prisoner should be kept in a particular facility and in determining where within that particular facility the prisoner should be kept . . . ."

Id.  In analyzing the claim, the Sixth Circuit rejected the plaintiff's contention that various

federal statutes and regulations (18 U.S.C. § 4042(a) and 28 C.F.R. § 541.10) prescribed a

course of action for BOP officials to follow under the first prong of the Gaubert test.  See id.

at 396-97.  Turning to the second prong, the court reasoned  that "decisions by prison

officials to ignore specific and immediate threats against inmates are less likely to be the type

of decision that can be said to be grounded in the underlying policy of the [Bureau of

Prisons], which requires prison officials to provide for the safekeeping and protection of

-6-

inmates." <u>Id.</u> at 398.  The Court went on to reason that "a guard's conscious decision not to protect an inmate from a specific and immediate attack cannot be said to 'be grounded in the policy of the regulatory regime.'"  <u>Id.</u> (quoting <u>Gaubert</u>, 499 U.S. at 325).  Emphasizing the presumption that "decisions by prison officials regarding and inmate's safety were 'of the kind that the discretionary function exemption was designed to shield'", <u>id</u>. at 397 (quoting <u>Gaubert</u>, 499 U.S. at 325), the Court determined: (1) the prison officials' prior decision to place the deceased in protective lock-up did not "demonstrate the existence of a specific and immediate threat against [the deceased]" and was "insufficient to rebut the presumption." <u>Id</u>.  The Court likewise determined that the plaintiff's bald allegations regarding the placement of the deceased in an unsafe facility were insufficient to rebut the presumption. <u>Id</u>. The court, therefore, found that the claim fell within the discretionary function exemption and dismissed the complaint.

In the present matter, the Plaintiff avers in his Complaint:

On October 21, 2002, Plaintiff was under the direct supervision of FCI Elkton prison guard when [sic] was confronted by another inmate several decades younger than Plaintiff also under the direct supervision of FCI Elkton prison guards. (Compl. ¶ 23.)

FCI prison guard witnessed the confrontation between Plaintiff and the other inmate.  (Compl. ¶ 24.)

After confronting Plaintiff, the other inmate assaulted and severely beat the Plaintiff.  (Compl. ¶ 25.)
. . . .
The FCI Elkton prison guards supervising Plaintiff and the inmate that assaulted Plaintiff immediately prior to and during the assault failed to provide for the protection of Plaintiff.
(Compl. ¶ 28.)

> Prior to the assault on Plaintiff, the FCI Elkton prison guards supervising Plaintiff and the inmate that assaulted Plaintiff knew or should have known of the specific, immediate threat of assault to Plaintiff.  (Compl. ¶ 29.)
>
> The FCI Elkton prison guards supervising Plaintiff and the inmate that assaulted Plaintiff immediately prior to and during the assault failed to prevent or stop the assault.  (Compl. ¶ 30.)

The Plaintiff asserts that the BOP breached the statutory and regulatory duties: (1) to provide for the safekeeping and protection of Plaintiff pursuant to 18 U.S.C. § 4042(a), see (Compl. ¶ 34); (2) to take disciplinary action against the inmate that assaulted Plaintiff after the prison officials became aware of the threat to Plaintiff's safety as required by 28 C.F.R. § 541.10(a)(b) as well as after the assault, see (Compl. ¶¶ 35, 37); (3) to place the Plaintiff in administrative detention for protection pursuant to 28 C.F.R. § 541.23; and (4) to prevent the assault, see (Compl. ¶ 38).

Citing Montez, the United States contends in its motion that the Plaintiff "does not allege any facts sufficient to take the Plaintiff's claim out of the discretionary function exemption."  (Dkt. # 6, Mem. in Support to Mot. to Dismiss at 6.)  The Plaintiff counters that his Complaint "contains key allegations that the plaintiff in Montez failed to plead."  (Dkt. # 10 at 4.)  Specifically, the plaintiff alleges:

> [I]mmediately prior to the assault, the FCI Elkton prison guards witnessed a confrontation between [Plaintiff] and the inmate that assaulted him and knew of the presence of a specific and immediate threat to [Plaintiff].  Despite that knowledge and an opportunity to act, the FCI Elkton prison guards failed to take any action to prevent the assault or protect [Plaintiff].

(Dkt. # 10 at 4.)  The Plaintiff reasons:

[P]rior to the assault, the FCI Elton prison guards witnessed a confrontation between  [Plaintiff] and the inmate that assaulted him; that the FCI Elkton prison guards knew of the presence of a specific and immediate threat to [Plaintiff] from that inmate; and that the FCI Elkton prison guards failed to take any action to prevent the assault or protect [Plaintiff].  As a result, [Plaintiff] was assaulted and suffered severe injuries that could, and should, have been prevented.

These allegations are sufficient to rebut the Gaubert presumption that decisions by FCI Elkton Prison guards were grounded in policy of the Bureau of Prisons.

(Dkt. # 10 at 5.)

To the extent the United States seeks to launch a facial attack to the Complaint, the Court finds that the Plaintiff has alleged sufficient facts – that the Court must take as true in a facial challenge– to rebut the Gaubert presumption.  The parties acknowledge that the statutes and regulations cited by the Plaintiff do not impose a mandatory, non-discretionary duties on the BOP officials.  See (Dkt. # 10 at 2). The issue, therefore, is whether the BOP officials engaged in "the type of agency decision making that takes broad agency policies into account." Montez, 359 F.3d at 399 (Rogers, J. concurring); see Gaubert, 499 U.S. at 323 (holding that the second prong requires that the judgment or choice be based on "'considerations of public policy.'"(Quoting Berkovitz, 486 U.S. at 537)).

The court in Montez expressly opined that although it was "unable to find any post-Gaubert case that illustrates a situation where an injured prisoner's complaint is unquestionably adequate to survive a motion to dismiss . . . . a complaint alleging the facts set forth in [United States v.] Muniz, [374 U.S. 150 (1963)] would be adequate, . . . to

survive a motion to dismiss." Montez, 359 F.3d at 398.  In Muniz, the Supreme Court

addressed a complaint where the plaintiff alleged:

> Respondent Muniz alleged that he was, in August 1959, a prisoner in a federal correctional institution in Danbury, Connecticut.  On the afternoon of August 24, Muniz was outside one of the institution's dormitories when he was struck by an inmate, and then pursued by 12 inmates into another dormitory.  A prison guard, apparently choosing to confine the altercation instead of interceding, locked the dormitory.  The 12 inmates who had chased Muniz into the dormitory set upon him, beating him with chairs and sticks until he was unconscious.  Muniz sustained a fractured skull and ultimately lost the vision of his right eye.  He alleged that the prison officials were negligent in failing to provide enough guards to prevent the assaults leading to his injuries and in letting prisoners, some of whom were mentally abnormal, intermingle without adequate supervision.

Muniz, 374 U.S. at 152.  The Sixth Circuit in Montez found these facts sufficient to survive

a motion to dismiss because, as discussed *supra*,  "a guard's conscious decision not to protect

an inmate from a specific and immediate attack cannot 'be said to be grounded in the policy

of the regulatory regime.'" Montez, 359 F.3d at 398 (quoting Gaubert, 499 U.S. at 325).

The allegations presented in the Plaintiff's complaint compare favorably to those

presented in Muniz and endorsed by Montez.  The Plaintiff has alleged that FCI Elkton

officials/employees were aware of a specific and immediate threat to him and failed to take

corrective measures.  The Plaintiff then suffered severe injuries arising from this threat.

Accepting these allegations as true, the Court finds that Montez compels a denial of the

pending motion to dismiss.

However, the United States has filed a Reply therein launching a factual attack on the

Plaintiff's complaint.  See (Dkt. # 11).  The United States alleges that "neither the Plaintiff

-10-

nor the other inmate were under the direct supervision of prison guards at the time of the

assault", (Dkt. # 11 at 2), and "the Plaintiff has not alleged any facts which show that the

prison guards knew or should have known of the alleged threat", (Dkt. # 11 at 3).  In support

of its contention, the United States presents into evidence FCI Elkton's report of the

investigation of the incident.   See (Dkt. # 11, Ex. # 1).  This report includes internal

memoranda of FCI Elkton officials, that provide, in pertinent part:

> On Monday, October 21, 2002, at approximately 3:54 p.m., I was advised by
> several Unit EB inmates that "old man" Cottage was "down" in the unit in
> between the ranges.  I immediately secured the Unit EB middle doorway and
> retrieved the stretcher.  Upon arrival in the Unit EB range (nearest the
> bathroom), I observed Cottage and Officer Rohrer.  Inmate Cottage was
> complaining of a broken (dislocated) left hip.  I advised Officer Rohrer to
> notify medical staff via radio to bring the back board and crash cart ASAP.
> Upon arrival of medical personnel, I assisted in securing inmate Cottage to the
> backboard for transport to medical services.
> (Dkt. # 14, Ex. # 1 at 2 of 4 & Ex. 1(b) Mem. of Don Yeasted, Jr. dated
> 10/21/02).

> On October 21, 2002, at approximately 3:50 p.m., inmate Collins approached
> me and stated that inmate Cottage had slipped and fell while they were
> "playing around" on the Unit EB side of the unit.  I went to the area and found
> inmate Cottage lying on the ground holding his hip.  Health Services and
> Operations Lieutenant were advised of the situation.  Both inmates were
> escorted to Health Services for medical evaluation.
> (Dkt. # 14, Ex. # 1 at 2 of 4 & Ex. 1(b) Mem. of Darren Rohrer dated
> 10/21/02).

The report further includes the Plaintiff's statement following the accident, in pertinent part:

> [Plaintiff] stated that he was walking out of the restroom and accidently
> bumped into inmate Collins.  Inmate Collins shoved him and he shoved him
> back. [Plaintiff] stated that when he went to shove him back, inmate Collins
> picked him up off the ground and threw him to the floor.  He stated inmate

Collins left for a second and came back noticing his hip was dislocated and attempted to put in [sic] back.  He stated minutes later, the Officer arrived.

(Dkt. # 14, Ex. # 1 at 3 of 4.)  The report concludes with the following findings:

[I]nmate Collins assaulted [Plaintiff] by picking him up off the ground and throwing him to the ground.  The conclusion is based upon all available documentation, medical assessments, a videotape of the incident and the statement from [Plaintiff]. [Plaintiff] will receive a CIM classification of Separation based on the fact that a threat still exist [sic] to [Plaintiff] is he was [sic] to be placed in the general population with inmate Collins.  It is also recommended that inmate Collins receive an incident report for Code 101, Assaulting any Person, remain in the Special Housing Unit, and receive a transfer after completion of Inmate Discipline process to an appropriate institution commensurate with his special needs.

(Dkt. # 14, Ex. # 1 at 3 of 4.)

Setting aside the evidentiary issues raised by the Plaintiff in regard to the report, the inescapable conclusion to be drawn from report is that at least several of allegations presented in the Complaint appear to be unsupported by the record.  Specifically, it appears that the Plaintiff was not under the supervision of FCI Elkton officials at the time of the assault, nor were said officials aware of any "specific or immediate threat" to the Plaintiff. The Court has provided the Plaintiff with the opportunity to file a Sur-Reply – nevertheless, the Plaintiff has failed to advance any evidence supporting the relevant allegations of the Complaint.  The Plaintiff merely suggests that as the jurisdictional facts "are intertwined with the merits of the Plaintiff's claim", the Court "'must assume jurisdiction and proceed to the merits.'" (Dkt. # 15 at 2) (quoting Montez v. Dep't of Navy, 392 F.3d 147, 150 (5th Cir. 2004).

Consequently, the Court confronts competing interests.  On the one hand, Congress has waived the government's sovereign immunity in order to afford an injured party the right to  a judicial redress sounding in tort.  See Dolan, 126 S.Ct. at 1258-59.  On the other hand, the purpose of the exceptions to these waivers is to prevent the disruption of governmental functions by frivolous suits.  Id.  The Court must be mindful, however, that "unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute," Kosak v. United States, 465 U.S. 848, 553 n. 9 (1984), which "waives the Government's immunity from suit in sweeping language," United States v. Yellow Cab Co., 340 U.S. 543, 547, 71 S. Ct. 399, 95 L. Ed. 523 (1951).  At the same time, immunity is effectively lost if the case is erroneously permitted to proceed through extensive discovery and trial.  See generally, Saucier v. Katz, 533 U.S. 194, 200-01 (2001).

The Defendant's litigation conduct has frustrated the Court's efforts to balance these interests.  The United States shifting tactics from a facial to a factual assault on the Complaint has provided a limited record in which the Court may resolve any factual disputes.  For example, the United States and the internal investigative report refer to a videotape of the incident that is omitted from the record.  Additionally, it is uncontroverted that the Plaintiff has been subjected to unfair surprise by the United States's tactics in filing the investigative report for the first time in a Reply memorandum.  The Plaintiff explicitly argues that it did not have the opportunity to fully review and investigate the document.  Furthermore, the Defendant's filing of the investigative report has given rise to various evidentiary challenges on the grounds of authentication and hearsay.

However, the Court does not place these difficulties exclusively at the Defendant's feet.  "'Generations of jurists have struggled with the difficulty of distinguishing between Rules 12(b)(1) and [dismissals on the merits] in federal question cases. . . .'"  Primax Recoveries, Inc. v. Gunter, 433 F.3d 515, 517 (6th Cir. 2006) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1188 (2d Cir. 1996)); see also Kontrick v. Ryan, 540 U.S. 443, 453 (2004) (admonishing courts to use the term "jurisdiction" with more precision, describing the term as "a word of many, too many, meanings").  As many courts have observed, this difficulty is heightened in FTCA cases.  See e.g., Palay v. United States, 349 F.3d 418, 424 (7th Cir. 2003) ("More recently, however, we have questioned whether the exhaustion requirement and the statutory exceptions to the FTCA truly are jurisdictional in nature.").

In light of these inherent as well as constructed difficulties, the Court hereby orders that it shall convert the pending motion to dismiss into a motion for summary judgment.  The pending motion to dismiss therefore is **DENIED** subject to re-file as a motion for summary judgment.  The following schedule shall govern this matter:

> The parties may engage in limited discovery on or before October 20, 2006 relating to the issues of whether the FCI Elkton officials were aware of a specific and immediate threat to the Plaintiff and whether said officials supervised the Plaintiff at the time of the assault.

> The Defendant shall file its motion for summary judgment and all supporting materials on or before November 3, 2006.

> The Plaintiff shall file his Memorandum in Opposition on or before December 4, 2006.

The Defendant may file a Reply on or before <u>December 22, 2006.</u>

**IT IS SO ORDERED.**


<u>**s/ Peter C. Economus - August 22, 2006**</u>
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**