**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **GEORGE J. COTTAGE,** | ) | **CASE NO. 4:05 CV 2293** |
| | ) | |
| **PLAINTIFF,** | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **v.** | ) | |
| | ) | **MEMORANDUM** |
| **UNITED STATES OF AMERICA,** | ) | **OPINION AND ORDER** |
| | ) | |
| **DEFENDANT.** | ) | |

This matter is before the Court on the Defendant's Motion for Summary Judgment. See (Dkt. # 19). The United States of America ("Government") moved for summary judgment after the Court converted an earlier motion to dismiss into a motion for summary judgment. See (Dkt. # 16) ("Order on Motion to Dismiss"). For the reasons that follow, the Defendant's Motion for Summary Judgment is **GRANTED**.

**I. BACKGROUND**

The facts of the case are detailed in the Order on Motion to Dismiss, (Dkt. # 16), but the pertinent facts to the disposition of the Motion for Summary Judgment are recounted here. George Cottage, a federal prisoner at the Federal Correctional Institute at Elkton, Ohio ("FCI Elkton"), filed a complaint pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., claiming the Government negligently failed to protect him from an

assault by another inmate. Cottage alleged he suffered a broken hip and femur because of the assault. <u>See</u> (Compl. ¶¶ 22-25). The Government filed a motion to dismiss claiming the Court lacked subject matter jurisdiction over the case. The Government argued that Cottage's claim fell within the discretionary function exception to the FTCA. The Court denied the motion to dismiss, subject to refile as a motion for summary judgment, and allowed for limited discovery "relating to the issues of whether the FCI Elkton officials were aware of a specific and immediate threat to the Plaintiff and whether said officials supervised the Plaintiff at the time of assault." Order on Motion to Dismiss at 14, (Dkt. # 16).

The Government now moves for summary judgment, asserting that Cottage has not identified any individual prison guards who negligently failed to protect him from the assault. The Government suggests that Cottage merely employed "artful pleading" to survive the motion to dismiss, and, without any facts to back that pleading, summary judgment is appropriate. Motion for Summary Judgment at 5. In support of its motion to dismiss, the Government submitted six exhibits: (1) the FCI Elkton report of the assault, (Dkt. # 16, Ex. A); (2) the Declaration of Roberta M. Truman, Assistant Regional Counsel, Northeast Regional Office of the Federal Bureau of Prisons, (Dkt. # 16, Ex. B); (3) an internal memorandum from Officer Darren Rohrer regarding the assault, (Dkt. # 16, Ex. 1b); (4) a copy of the Inmate Accident Report completed by medical staff at FCI Elkton, (Dkt. # 16, Ex. 1c); (5) Plaintiff's response to Defendant's first set of interrogatories, (Dkt. 16, Ex. C); and (6) the Declaration of Janel M. Fitzgerald, Chief of Correctional Services at FCI Elkton, (Dkt. # 16, Ex. D). The Government also submitted a video recording, taken during the

assault, of the area where the assault occurred ("Video"). See (Dkt. # 18). Cottage submitted Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("Response"), see (Dkt. # 21), and asserted that some FCI Elkton guards were aware of the threat to Cottage. Attached to the Response was the Daily Assignment Roster for FCI Elkton ("Assignment Roster", see (Dkt. # 21, Ex. A), for the date the assault occurred.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ P. 56(c). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." Little v. BP Exploration & Oil Co., 265 F.3d 357, 361 (6th Cir. 2001). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); accord Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 556-57 n.7 (6th Cir. 2000). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. "A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56 (c)). For a dispute to be genuine, the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

**III. LAW**

### A. FEDERAL TORT CLAIMS ACT

The United States Constitution vests Congress with the exclusive power to determine a lower federal court's subject matter jurisdiction. See U.S. Const. Art. 111 § 1; see also Kontrick v. Ryan, 540 U.S. 443, 452 (2004). Where, as here, the defendant in a case is the United States, Congress must consent to the Government's being sued. See Montez v. United States, 359 F. 3d 392, 395 (6th Cir. 2004) (citing United States v. Orleans, 425 U.S. 807, 814 (1976)). Through its enactment of the FTCA, Congress has waived the United States's immunity from suits:

> for injury or loss of property, or personal injury of death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346 (b)(1). The FTCA also makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. 2674; see generally, Dolan v. United States Postal Serv., 546 U.S. 481 (2006).

## B. DISCRETIONARY FUNCTION EXCEPTION

The FTCA also contains several exceptions to this waiver of sovereign immunity. One such exception is the discretionary function exception, 28 U.S.C. § 2680 (a), under which the Government will not be liable for torts committed by its employees if the employee's conduct was discretionary in nature. If the cause of action falls within the discretionary function exception, the plaintiff's claim must fail for lack of subject matter jurisdiction. Sharp v. United States, 401 F.3d 440, 443 (6th Cir. 2005).

In United States v. Gaubert, the Supreme Court announced a two-part test to determine whether a challenged action falls within the discretionary function exception, 499 U.S. 315, 322 (1991). The first prong considers whether the employee's decision involved an element of judgment or choice. Id. If the challenged decision did not involve an element of choice - for instance, the employee's actions were clearly dictated by statute or regulation - the decision is outside the discretionary function exception and the claim can go forward. If, on the other hand, the decision did involve an element of choice the first prong is satisfied.

To satisfy the second prong, the plaintiff must show that the challenged decision was not based on considerations of public policy. Id. at 323. If the decision was based on considerations of public policy it is within the discretionary exception and the claim must fail for lack of subject matter jurisdiction. Conversely, if the decision involved discretion but the exercise of that discretion was not based on public policy considerations, the claim is outside the exception and can continue. Under the second prong, the plaintiff must rebut the presumption that the challenged action was based on considerations of public policy. Id. at

-5-

324.

## IV. ANALYSIS

First, it is necessary to determine whether the challenged act - failing to protect Cottage from the assault - involved an element of judgment or choice. There is no statute or regulation instructing a prison official how to act when an inmate is facing the threat of an assault by another inmate. While the Code of Federal Regulations contains instructions that prison officials "may consider the following categories of inmates as protection cases," 28 C.F.R. § 541.23, the language is not mandatory. See also, Dykstra v. United States Bureau of Prisons, 140 F.3d 791, 796 (8th Cir. 1998) (holding that 28 C.F.R. § 541.23 does not contain mandatory language). Furthermore, the Sixth Circuit has held that various federal statutes and regulations (18 U.S.C. § 4042(a) and 28 C.F.R. § 541.10) do not prescribe a course of action for prison officials to follow under the first prong of the Gaubert test. Montez, 359 F.3d at 396-97. The decision not to protect Cottage involved discretion, and therefore, the first prong of the discretionary function exception is satisfied.

Second, Cottage must rebut the presumption that the challenged decision was based on considerations of public policy.[1] In Montez, the Sixth Circuit, discussing the second prong of the discretionary function exception analysis, stated that "a complaint that alleges the existence of a specific and immediate threat against an inmate is more likely to survive

---

[1] Although Cottage has not addressed the presumption that the challenged decision not to protect him was based on considerations of public policy, the Court has drawn every possible inference in his favor on the issue, as failure to rebut this presumption is fatal to Cottage's claim.

a motion to dismiss than a complaint that either alleges a nonspecific threat or provides only conclusory statements regarding the existence of a threat." Id. at 398. In Montez, an inmate was found dead in the housing unit of the prison after being beaten to death with a fire extinguisher. Id. at 393-94. The assault occurred in an unsupervised area and the prison officials were unaware of the assault until a corrections officer discovered the body. Id. at 394. The prisons officials, however, were aware that the deceased inmate had prior altercations with other inmates and they previously had placed the deceased inmate in protective lock-up. Id. Two other inmates later were convicted of the murder. Id. The inmate's estate brought suit pursuant to the FTCA claiming, in pertinent part: The inmate's murder was the "direct and proximate result of the negligence" of the prison officials/employees. Id.

Cottage's claim that the guards were aware of the threat to him is conclusory and not supported by anything in the record. Unlike the situation in Montez, Cottage has not alleged that he was ever previously assaulted. Furthermore, Cottage has failed to provide any evidence in support of the allegation that guards were monitoring him in person at the time of the assault.[2] Also, Cottage has not alleged that he warned a guard about the threat.

---

[2] In fact, Cottage seems to have abandoned the allegation that prison guards were present during the assault. See, fn. 3, *infra*. While the Court instructed the parties to conduct discovery on the issue of whether any guards were present during the assault, Cottage relies only on conclusory allegations that guards were present. In her Declaration, Janel Fitzgerald stated that when she viewed the video, she did not see any guards in the area of the assault until several minutes after it occurred. See (Dkt. # 16, Ex. D). The Court has viewed the Video and agrees with Ms. Fitzgerald that no guards were present until several minutes after the assault when they arrived to treat Cottage.

Therefore, there is nothing in the record that would support Cottage's allegation that prison guards were aware of any threat to him. While decisions by prison guards to ignore specific and immediate threats to inmates are unlikely to be grounded in considerations of public policy, id., Cottage has failed to show that any guards were aware of any threat to him.

At most, Cottage has established that guards were monitoring the Video during the assault.[3] The strongest argument that can be drawn from this evidence is that the guards should have been monitoring Cottage personally, as opposed to monitoring the Video, at the time of the assault. Since Cottage has provided no evidence that any guard was aware of the threat before the assault occurred, the only way it could have been prevented was if a guard was in the area when the assault occurred. The presumption that Cottage must rebut, then, is that the decision to monitor the Video, instead of monitoring Cottage personally, was not based on considerations of public policy. However, a conclusion that a prison guard made a wrong decision about how to monitor a prisoner would require the Court to second-guess the "political, social, and economic judgements of an agency exercising its regulatory function." United States v. S.A. Empresade Viacao Aerea Rio Grandense, 467 U.S. 797, 820 (1984). Such a conclusion is impermissible. Id. The only permissible conclusion, then, is that Cottage cannot rebut the presumption that the guard's decision to monitor the Video was

---

[3] Cottage states that "[a]lthough the Government failed to identify any individuals with knowledge of any facts relating to the assault, the Assignment Roster identifies all FCI Elkton guards on duty at the time of the attack, including, presumably, the FCI Elkton guard(s) monitoring the cameras that captured the Video." Response at 2. The Court will construe this statement and the Assignment Roster as evidence that at least one guard was monitoring the Video at the time of the assault.

based on considerations of public policy.

Both prongs of the discretionary function exception are therefore satisfied, and Cottage's claim must fail for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment, see (Dkt. # 19), is **GRANTED**. Therefore, the Defendant is entitled to **JUDGMENT** on the sole count of the Complaint.

**IT IS SO ORDERED**.

 **/s/ Peter C. Economus April 11, 2007**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**